Defendant-appellant, Mohammad Abu-Nada, appeals from a divorce decree entered by the Clermont County Court of Common Pleas, Domestic Relations Division.
Appellant married plaintiff-appellee, Aysha Abu-Nada, on August 20, 1976, in Amman, Jordan. On July 20, 1992, appellant was incarcerated by federal authorities under an eighty-eight month sentence for a drug-related offense.
Appellee filed for divorce on January 3, 1997. The magistrate held hearings on July 28, 1997 and September 22, 1997. At the time of the hearings, the parties had four minor children.
The magistrate's decision was filed on October 27, 1997. Appellant filed objections to the magistrate's decision, which were overruled by the trial court. The divorce decree was entered on June 30, 1998.
Appellant raises five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN REFUSING TO FIND THAT A DAUGHTER OF THE PARTIES WAS EMANCIPATED.
In his first assignment of error, appellant contends that the trial court erred by failing to find that the parties' seventeen-year-old daughter, Kholood, was emancipated. Kholood was married in Jordan in 1996 at age fifteen, but returned to the United States in early 1997 and has lived with and been supported by appellee ever since. Kholood was not divorced under Jordanian law, but appellee testified that she was attempting to arrange for such a divorce. At the hearing, the parties debated whether the marriage was void under Ohio law. The trial court found that Ohio had no obligation to recognize the foreign marriage and that appellant had presented no evidence to indicate that Kholood was otherwise emancipated. Appellant claims that the trial court did not have the authority to declare that the Jordanian marriage was void.
If Kholood is emancipated, appellant is not responsible for her support. The emancipation of a child may be effected in many ways: marriage, entering the armed services, leaving home, becoming employed and self-subsisting, or in any other manner in which the parent authorizes or occasions the child to remove himself from parental subjugation, control and care.Omohundro v. Omohundro (1982), 8 Ohio App.3d 318. Whether a child is emancipated, so as to relieve a parent from the obligation of support, depends upon the particular facts and circumstances of each individual case. In re Owens (1994),96 Ohio App.3d 429. The rules of law governing emancipation do not point to specific facts or a bright-line standard. Powell v.Powell (1996), 111 Ohio App.3d 418. Therefore, regardless of its validity under Ohio law, Kholood's marriage is not determinative of the emancipation issue for child support purposes. The evidence clearly established that appellee is providing for Kholood's care and support. Kholood's husband remained in Jordan and provides no support. Under these circumstances, the trial court did not err in finding that Kholood is not emancipated. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FINDING DEFENDANT'S INCOME FOR PURPOSES OF CHILD SUPPORT TO BE $42,500.00.
In his second assignment of error, appellant argues that the trial court erred in imputing income of $42,500 to him for child support purposes. The parties operated labor intensive businesses such as a sandwich shop and carryout stores during the marriage. Joint tax returns from 1991-1995 showed income between $19,285 and $29,300. Appellee testified that appellant had earned between $40,000 and $45,000 from self-employment. Appellee reported 1996 income from the businesses of $32,300. Appellee was also caring for the parties' children. Her testimony that appellant had earned a higher figure from similar self-employment prior to his incarceration was therefore credible. Appellant did not cross-examine appellee on the amount she claimed appellant had earned prior to his incarceration. Appellant also presented no contradictory evidence. Appellant's wrongful conduct placed him in a position that he is no longer available for gainful employment, but does not relieve him from his obligation to support his children.Richardson v. Ballard (1996), 113 Ohio App.3d 552. The trial court's determination of a parties' income for purposes of establishing child support is reviewed under the abuse of discretion standard. Pauly v. Pauly (1997), 80 Ohio St.3d 386,390. The trial court did not abuse its discretion by accepting appellee's testimony on this issue, and appellant's second assignment of error is overruled.
Appellant's third and fifth assignments of error concern the equity in certain real estate owned by the parties and will be considered together:
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN COMPUTING THE RESPECTIVE INTEREST OF THE REAL ESTATE OWNED BY THE PARTIES.
Assignment of Error No 5:
 THE TRIAL COURT ERRED IN FINDING THAT ALL EQUITY IN REAL ESTATE GENERATED AFTER DEFENDANT'S INCARCERATION WAS NOT MARITAL PROPERTY.
In his third assignment of error, appellant claims that the trial court erred in computing the parties' respective interest in the equity in two parcels of property: the marital residence on Twiggs Lane ("the Twiggs Lane property") and a building which contained one of the parties' businesses on Vine Street ("the Vine Street property"). In his fifth assignment of error, appellant claims that the trial court erred in determining that the increase in equity in the properties following his incarceration was appellee's separate property. Appellee has not cross-appealed but asks this court to correct an alleged error in the court's calculation of the appreciation in equity of the properties.
The parties stipulated and the trial court determined that the de facto termination date of the marriage was the date of appellant's incarceration, i.e., June 20, 1992. The parties stipulated to the value of the marital equity in both properties as of that date. The parties also stipulated in a June 9, 1997 pre-trial order to the "present value" of the properties ($115,000 for Twiggs Lane property and $43,000 for Vine Street property). On July 29, 1997, appellee provided revised figures for the mortgage balances and equity in the properties.
The magistrate found that appellee was entitled to the increase in equity from June 1992 until June 1997 as her separate property because it was acquired after the de facto termination of the marriage. Appellant argues that awarding appellee the increase in equity after the termination of the marriage was an abuse of discretion because such appreciation is not specifically listed in the categorization of separate property found at R.C. 3105.171(A)-(6)(a).
Ordinarily, the period of time from the date of the marriage through the date of the final hearing in a divorce is considered "during the marriage" for purposes of property classification and valuation. See R.C. 3105.171(A)(2)(b). Where the date of the final hearing would be inequitable, the court may select a date it considers equitable in determining marital property. Id. The parties stipulated to the date of appellant's incarceration as the date of the termination of the marriage. Appellant clearly made no contributions to the family or to the increase in equity in the properties after that date. The increase in equity was separate property because it was not acquired "during the marriage." The trial court's determination that any increase in equity after the de facto termination of the marriage was appellee's separate property flowed directly from the stipulation and was not an abuse of discretion. Therefore, appellant's fifth assignment of error is overruled.
The court made complete findings on all the marital and separate assets and liabilities of the parties, including the increases in equity discussed above. The magistrate noted that under R.C. 3105.171(A) all marital property is to be divided equitably and that an equal division is presumed to be equitable. The magistrate categorized the marital debts and assets and divided the assets equally. The magistrate also noted that appellant had already received some of the marital assets. The magistrate then arrived at a "recapitulation" figure of $66,689 which appellant owed to appellee. The magistrate secured this amount by requiring appellee to quitclaim her interests in both properties to appellant and by requiring appellant to execute mortgages back to appellee on the properties. The mortgage figures were calculated as a portion of the total recapitulated amount which appellant owed to appellee — mirroring the percentage that the equity value of each property bore to the whole amount owed to appellee,i.e., sixty-five percent Twiggs Lane ($43,347.85) and thirty-five percent Vine Street ($23,341.15).
Appellant challenges the final figure secured by the Vine Street property because he claims it does not represent the amount of the equity in that property which was awarded to appellee. He is correct. However, as noted above, the amounts which were to be paid to appellee and which were secured by each parcel of property were not based solely upon her equity in the properties but were based upon a final calculation or "recapitulation" of what was owed by appellant to appellee based upon all of the assets and liabilities of the parties.[1]
It is well-established that in a domestic relations case, based upon the facts and circumstances of the particular case, the trial court has broad discretion in dividing the parties' marital assets. Briganti v. Briganti (1984), 9 Ohio St.3d 220,222. In determining whether the trial court abused its discretion when dividing the parties' marital assets, the reviewing court cannot examine the division of a particular asset in isolation; rather, the reviewing court must view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. Jelen v. Jelen (1993), 86 Ohio App.3d 199,202. We have reviewed the entire division of property here and find no abuse of discretion. Appellant's third assignment of error is overruled.[2]
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN REFUSING TO RECOGNIZE THE FINANCIAL INTEREST OF CO-OWNERS OF REAL ESTATE.
In his fourth assignment of error, appellant claims that the trial court erred in refusing to recognize the interest of his parents, Salem and Labibeh Abu-Nada, in the Twiggs Lane property. The property was titled in the name of "Mohammad Abu-nada, Trustee, and Salem Abu-nada, who is married to Labibeh S. Abu-nada." Salem and Labibeh Abu-Nada were joined as defendants and were served with process pursuant to Civ.R. 75(B). They did not enter appearances in the case, although Labibeh testified at the hearing. Labibeh testified that her social security check was used for the Twiggs Lane mortgage. However, appellee testified that she had paid all expenses after appellant's incarceration. The magistrate found that appellant's parents had presented no credible testimony to indicate they were entitled to any equitable interest in the real estate.[3] The trial court's findings concerning the credibility of witnesses are entitled to substantial deference. The findings of a trial court will be upheld where the record contains some competent evidence to support those findings.Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468. The trial court had jurisdiction over the property pursuant to R.C.3105.171(B).[4] The property was awarded to appellant subject to the mortgages which the trial court ordered appellant to execute in favor of appellee. The trial court has broad discretion in determining the appropriate scope of property awards. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. The award to appellant with mortgages in favor of appellee was within the court's jurisdiction pursuant to R.C. 3105.171(E)(1).[5] SeeHuener v. Huener (1996), 110 Ohio App.3d 322. Therefore, appellant's fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] For instance, the magistrate found that appellant had already received $20,000 in marital assets for his attorney fees — a separate debt.
[2] We also decline to correct the trial court's alleged errors in calculating the "present" equity in the properties which appellee has raised in her brief. Appellee states that the trial court failed to use the stipulations on the present equity which she provided to the magistrate on or about July 29, 1997. First, appellee did not file a cross-appeal. Second, these alleged errors have never been raised in the trial court. Finally, appellee admitted that she made no payments on the home after June 1997 and none on the Vine Street property after January 1997. The trial court therefore did not err in calculating appellee's award for the increase in equity as of June 1997 and not as of any later date.
[3] It was undisputed that appellant's parents had been repaid on a loan for the down payment on the Twiggs Lane residence.
[4] R.C. 3105.171(B) provides in part that "the court has jurisdiction over all property in which one or both spouses have an interest."
[5] R.C. 3105.171(E)(1) provides that "* * * [t]he court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.