**In re OWENS.**

[Cite as *In re Owens* (1994), 96 Ohio App.3d 429.]

Court of Appeals of Ohio,
Clark County.

No. 3117.

Decided Aug. 12, 1994.

Pete F. Pappas, for appellee.

U. Timothy Juergens, for appellant.

BROGAN, Judge.

Edward Wayne Owens appeals from the judgment of the Clark County Court of Common Pleas reinstating his child support obligation. Janet Faye Owens cross-appeals from that same judgment.

Edward advances two assignments of error, asserting that (1) "the court erred in reinstating child support following the termination of custodial care by appellee and her demand that the child leave the custodial residence, followed by his independent enlistment in the Federal Job Corps training program, and (2) if the appellate court finds the order for payment of child support was properly reinstated, the trial court erred in failing to recompute support consistent with Ohio Revised Code Section § 3113.215, when a 41% support variance is apparent."

In her cross-appeal, Janet asserts that "the court erred in temporarily terminating child support while it was waiting for a continuation of the motion hearing [sic]. The support terminated should be reinstated and ordered paid."

The facts and procedural history of this case are as follows.

Janet Faye Owens and Edward Wayne Owens were married on April 16, 1971. Two children were born of the marriage, Edward Wayne Owens II, who is emancipated, and Jason Travis Owens, born June 3, 1975.

On September 11, 1991, Janet Faye Owens and Edward Wayne Owens filed a petition for dissolution of marriage. The parties executed an amended shared parenting agreement which provided, *inter alia,* that due to Jason's social and learning disabilities, Edward would pay $300 bi-monthly child support until September 30, 2001, or until Edward's death, although Jason would be over the age of eighteen. Although the parties had joint custody of Jason, they mutually agreed that Jason would spend most of his time with his mother. The judgment entry and decree of dissolution of marriage was filed on October 18, 1991.

Jason was enrolled at the Joint Vocation School in a welding program through Shawnee High School in Springfield, Ohio, but dropped out in June 1993, at the end of his eleventh grade year. He held a part-time job at a fast food restaurant for several weeks, but quit because he was not working enough hours.

In July 1993, Janet asked Jason to leave her home. He went to live with his father for about one month, and left there to live with his paternal uncle. His mother continued to provide him with money, clothing, and other necessities. He stayed with his uncle for a short time and then enrolled in the Federal Job Corps program in Illinois. In that program, the federal government provided Jason with room and board. During the time he was in Illinois, Janet telephoned Jason often, particularly to encourage him to remain in the program. Jason eventually

dropped out of the program, asserting that he was experiencing many problems, including being beaten. He is now living with his mother in Springfield, Ohio, and has made arrangements to return to school full time.

On August 23, 1993, Edward filed a motion to terminate child support. On September 21, 1993, the court ordered that the child support funds be paid into an escrow account. A hearing was held on October 22, 1993, and on October 28, 1993, the trial court filed a judgment entry and order suspending the child support payments. However, the court noted that a final and compete decision could not be reached until Jason appeared in court to testify. Jason appeared in court on November 30, 1993, and on December 6, 1993, the trial court overruled Edward's motion to terminate support and ordered the payments reinstated as of December 1, 1993. Edward filed a notice of appeal on December 15, 1993. Janet filed a cross-appeal on December 27, 1993.

 In his first assignment of error, Edward asserts that the court erred in reinstating child support following the termination of custodial care by appellee and Jason's enlistment in the Federal Job Corps training program. Specifically, Edward asserts that Jason's departure from his mother's home at her request and his independent decision to enter the Job Corps were acts sufficient to constitute emancipation and thereby terminate his child support obligation.

 Ordinarily, emancipation alludes to the freeing of a minor child from parental control. *Price v. Price* (1983), 12 Ohio App.3d 42, 43, 12 OBR 129, 130–131, 465 N.E.2d 922, 923–924, citing *Schirtzinger v. Schirtzinger* (1952), 95 Ohio App. 31, 52 O.O. 372, 117 N.E.2d 42. The question as to when a child is emancipated so as to relieve a parent from the obligation of support depends on the particular facts and circumstances of each case. *Ford v. Ford* (1959), 109 Ohio App. 495, 12 O.O.2d 67, 167 N.E.2d 787 (fact that child graduated from high school and had $400 in savings did not support a finding of emancipation).

 Ordinarily, a parent's duty of support ends when the child reaches the age of majority. *Castle v. Castle* (1984), 15 Ohio St.3d 279, 282, 15 OBR 413, 415–416, 473 N.E.2d 803, 806. In Ohio, the law regards "a normal child as capable of providing his or her own support at the age of eighteen." *Cooksey v. Cooksey* (1988), 55 Ohio App.3d 135, 562 N.E.2d 934, citing *Castle, supra.* However, the Supreme Court has noted that where a child is mentally or physically disabled, the common-law duty imposed on parents to support their children may continue beyond the age of majority. *Castle, supra,* at 283, 15 OBR at 416–417, 473 N.E.2d at 806–807. This obligation has been held to cease "only when the necessity for the support ceases." *Id.* at 282, 15 OBR at 415–416, 473 N.E.2d at 806, quoting *Davis v. Davis* (1954), 246 Iowa 262, 266, 67 N.W.2d 566, 568. The court must make a factual determination as to whether the child is so physically

or mentally disabled so as to be incapable of maintaining himself or herself. *Castle, supra,* at 283, 15 OBR at 416–417, 473 N.E.2d at 806–807.

Ohio courts have also considered the effect of a child's enlistment in the military on emancipation. In *Omohundro v. Omohundro* (1982), 8 Ohio App.3d 318, 8 OBR 427, 457 N.E.2d 324, the child voluntarily enlisted in the armed services to finish high school and enter a drug rehabilitation program. The court held that "[t]ypically, a minor who voluntarily enlists in the Armed Forces ceases to be dependent, and his parents are relieved from the necessity of incurring expense on his behalf for his support. In such cases, a finding of emancipation would be proper.

"There may exist, however, circumstances wherein military duty does not change the fact of dependency, just as there are times where a minor's engaging in business on his own or becoming employed and temporarily supporting himself will not result in an emancipation." (Citations omitted.) *Id.* at 320, 8 OBR at 429–430, 457 N.E.2d at 326.

The court noted that temporary support from another source followed by resumption of support by the parent does not necessarily constitute emancipation since some act of the parent constituting permanent renouncement of parental rights or inconsistent with continuation thereof is a prerequisite to emancipation. *Id.*

In *Howard v. Howard* (1992), 80 Ohio App.3d 832, 610 N.E.2d 1152, the Clermont County Court of Appeals held that a child enrolled in the Coast Guard Academy where he received a stipend as well as room and board was not emancipated. The court found that the appellee still paid for the child's travel expenses to and from school, telephone calls, and sent him food, money, and other sundry items.

In reviewing the facts of this case, we agree with the trial court that Jason is not yet emancipated. Although it appears that his mother ordered him out of her home, the record indicates that she continued to provide him with money, food, and basic necessities. Moreover, once he left his mother's home, he did not become independent, but went to live with his father, and later his uncle. Thus, he was not free of parental control. Furthermore, the evidence indicates that his mother provided him with money and paid for some of his long-distance telephone calls during his brief stay in the Job Corps, and that she also paid for his bus ticket back to Springfield.

In sum, we find that Jason did not become emancipated as a result of leaving his mother's home and enlisting in the Job Corps. Accordingly, Edward's first assignment of error is overruled.

■ In his second assignment of error, Edward asserts that if the order for payment of child support was properly reinstated, the trial court erred in failing to recompute support consistent with R.C. 3113.215(B)(4), when a forty-one percent support variance is apparent. However, recomputation is required under the statute only upon a motion to modify the amount of child support to be paid. Edward did not seek to modify child support, but to terminate child support. The court was, therefore, not required to perform the recomputation, or to make the findings required by the related provisions of R.C. 3113.215(B)(2)(c) to support a deviation from the Basic Child Support Schedule, or "guidelines." Because the court was not required to perform those steps or reach those results, we cannot find that it erred in not doing so. Accordingly, the second assignment of error is overruled.

■ In her cross-appeal, Janet asserts that the court erred in temporarily terminating child support while it was waiting for a continuation of the motion hearing and that the support terminated should be reinstated and ordered paid.

The trial court's reasoning for temporarily suspending child support payments from July 1, 1993 to December 1, 1993, can be discerned from the following dialogue.

"MR. JUERGENS: * * * I don't believe that the child's testimony makes much difference but I'm willing if the Court would suspend the payments and make an order to that effect so we could send it to the bureau. We have no guarantee even that this child is going to come back and live with his mother. The mother told him to leave, that's the last I knew.

"THE COURT: The future being uncertain, I think your motion is well taken as of today but I don't know what the child's plans are, if he knows. I want to hear his testimony. * * * I'll suspend the payment today.

"MR. PAPPAS: Your Honor, before you do that, I'd request that it continue to be escrowed. * * *

" * * * *

"MR. JUERGENS: But the problem I do have is that those expenses are not being placed upon anyone at the same time. The United States Government is taking care of him. It's impossible for us to justify continuing to take money out of his payroll, escrow it for expenses even today that his mother is not paying. Whatever is in escrow now, even if this was ever reinstated, should be released to him and there should be no further payments for any kind of support unless the Court finds he comes back to Springfield and the support should start again. * * *

" * * * *

"THE COURT: I'll suspend the payment and then maybe reinstate it should I later find that to be warranted. * * *"

It appears from the record that the trial court suspended the payments because Jason's basic needs were being met by the United States government. Absent an abuse of discretion, we will not find error in the trial court's determination that Jason's needs were being met by an alternate source during his enrollment at the Job Corps. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The record does indicate that Jason returned to live with his mother three or four weeks before the November 30, 1993 hearing. Therefore, the appellant's obligation to support his son should have begun on that date.

Accordingly the temporary suspension of support should have terminated on November 7, 1993. As modified, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

GRADY, P.J., and FREDERICK N. YOUNG, J., concur.