460 S.E.2d 736

**James Garland CASDORPH, Jr., Plaintiff Below, Appellant,**

**v.**

**Shela Gail CASDORPH, Defendant Below, Appellee.**

No. 22687.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 1995.

Decided July 13, 1995.

---

**10.** While we have carefully considered the parties' remaining arguments, we conclude that they are not meritorious.

WORKMAN, Justice:

This case is before the Court upon the appeal of James Garland Casdorph from the June 29, 1994, order of the Circuit Court of Kanawha County, in which the trial court concluded that the Appellant has a duty to pay child support to the Appellee, Shela Gail Casdorph, for the parties' daughter, Stacie Gail Casdorph (hereinafter Stacie). Stacie is past the age of majority and unemancipated, as well as totally and permanently disabled due to an automobile accident. The only issue before the Court is whether the circuit court erred in ordering the Appellant to pay post-majority child support. Based on a review of the record, the parties' briefs, and all other matters submitted before this Court,[1] we find that the trial court did not err in its ruling and accordingly, we affirm.

### I.

On April 21, 1966, the Appellee and the Appellant were married in Kanawha County, West Virginia. The couple had two children during the marriage, Stacie, who was born on October 18, 1971, and Courtenay Lynn, who was born on May 24, 1974.

On October 22, 1976, the parties were granted a divorce. The final divorce order entered that same day provided that the Appellant was to pay child support for Stacie and Courtenay "so long as each child is under the age of 18 years, unmarried, and not emancipated."

Stacie turned eighteen years old on October 18, 1989, and ceased to be a minor child under the state law.[2] Consequently, pursuant to the October 22, 1976, order, the Appellant's decretal duty to provide child support for Stacie ceased. However, Stacie never married, continued living at home with the Appellee and remained dependent upon the

Harold S. Albertson, Jr., Albertson & Jones, Charleston, for appellant.

W. Cassel Pulliam, Mark D. Moreland, Mark D. Moreland, L.C., Charleston, for appellee.

1. Consideration in rendering this decision was given to an amicus curiae brief submitted to the Court by the Office of the Child Advocate.

2. West Virginia Code § 2–3–1 (1994) provides, in pertinent part, that "no person who is eighteen years of age or older shall lack legal capacity, by reason of his age, to enter into contracts, sell or purchase real or personal property, create a lien, execute any legal or other written instrument, prosecute or defend legal actions, assert claims or deal in his own affairs in any manner whatsoever." *Id.*

Appellee for support.[3]

On February 10, 1991, Stacie was involved in an automobile accident, and was rendered a quadriplegic due to the severance of her spinal cord. She also suffered a severe and permanent brain injury. Stacie was subsequently found incompetent by the Kanawha County Commission, and the Appellee was appointed as her committee.[4]

From the date of her injury, until over three and one-half years later, Stacie continued to reside with the Appellee in her home, and the Appellee took the responsibility for Stacie's care, as Stacie was unable to attend to any of her own personal needs, including personal hygiene and nutrition. In November of 1994, the Appellee placed Stacie in a group home.

Since the Appellant refused to make any personal or financial contribution to Stacie's care and maintenance, on December 22, 1992, the Appellee filed a petition for modification of child support and determination of past-due child support, seeking an order requiring the Appellant to pay child support for Stacie retroactive to the date of her injury.[5] By recommended order dated March 22, 1994, the family law master, after conducting a hearing on the petition, found that the Appellant had no duty to support his disabled daughter. The Appellee filed a petition for review of the recommended order with the circuit court, and the circuit court, after conducting a hearing, concluded that the Appellant was legally obligated to pay child support for Stacie and, therefore, entered the order modifying child support.

## II.

■ The only issue before the Court is whether a parent is legally obligated to provide child support to a disabled child where the child's disability did not occur until after the child attained the age of majority. The Appellant argues that a parent's legal duty to support a child must have a predictable limit, which the Appellant maintains is the age of majority. Thus, the Appellant contends that since his daughter's disability occurred after she reached the age of majority, no legal duty to support her exists.[6] In contrast, the Appellee relies upon this Court's decision in *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985), as support for the proposition that the Appellant has a legal duty to provide support for their disabled daughter. The Appellee maintains that the duty to provide support for a disabled child who is physically and mentally unable to provide for her own needs cannot hinge on whether the disability will be suffered before that child turns eighteen, but rather should be determined by whether the child is emancipated from his/her parents when the disability was incurred.

3. Obviously, if the child has his or her own financial resources, or if the child receives sufficient financial resources by virtue of a civil action or otherwise, then that child would not be financially dependent upon his or her parent(s).

4. The Social Security Administration also determined that Stacie was totally and permanently disabled. Based on this determination, she receives supplemental security income.

5. At the time the Appellee filed her petition, the Appellant was in arrears with respect to the payment of child support pursuant to prior court orders. However, since the filing of said petition, the Appellant has paid the child support arrearage. Accordingly, this is not an issue before the Court.

6. The Appellant also argues, without any supporting authority, that the circuit court erred in awarding child support because its jurisdiction to award further child support ceased when the Appellant stopped paying child support for his daughter when she turned eighteen. The Appellee, however, correctly argues that since the father was in arrears with respect to the payment of child support at the time the Appellee's petition was filed, the circuit court had continuing jurisdiction over the parties.

In *Robinson v. McKinney*, 189 W.Va. 459, 432 S.E.2d 543 (1993), we found that "[t]he *W.Va. Code* also provides that '[c]hild support shall, under all circumstances, always be subject to continuing judicial modification.'" *Id.* at 464, 432 S.E.2d at 548 (quoting, in part, W.Va.Code § 48-2-16(a) (1984)). Further, in *Kinder v. Schlaegel*, 185 W.Va. 56, 404 S.E.2d 545 (1991), we held that "[t]he awarding of support for adult children who meet the criteria established in *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985), and *McKinney v. McKinney*, 175 W.Va. 640, 337 S.E.2d 9 (1985), is within the jurisdiction of both the family law master and the circuit court." *Id.* at 56, 404 S.E.2d at 545, Syl.Pt. 2; *see supra* text for detailed discussion of *Caserta* and *McKinney*. Accordingly, we find the Appellant's jurisdictional argument is without merit.

We initially addressed a parent's duty to provide support for a disabled child in *Caserta,* a decision involving two consolidated cases of parents seeking to recover damages from health care providers for wrongful pregnancy, wrongful life and wrongful birth. *Id.* at 408, 332 S.E.2d at 874. The causes of action arose out of a physician's alleged negligence in the performance of a tubal ligation, and another physician's alleged failure to perform an amniocentesis test which would have revealed a birth defect in the fetus. *Id.* In examining whether the parents could recover the extraordinary costs incurred as a result of the birth defect after the child reached the age of majority, we held that "[u]nder the common law where a child is incapable of supporting himself because of physical or emotional disabilities, the parents' obligation to support continues beyond the child's age of majority."[7] *Id.* at 416, 332 S.E.2d at 882 and Syl. Pt. 10. Additionally, we observed that " '[t]he duty on the parent to provide post-majority support arises not from the nature of the support or benefits sought, but from the condition of the child seeking the benefit.' " *Id.* (quoting *Lieberman v. Lieberman,* 517 S.W.2d 478, 480 (Mo.App.1974)).

The first divorce action before this Court concerning the issue of a post-majority child support award involved a circuit court's order requiring a father to continue to pay child support until his son reached twenty-one years of age. *McKinney v. McKinney,* 175 W.Va. 640, 337 S.E.2d 9 (1985). In *McKinney,* we held that "[a]lthough we do not encourage parents to jettison their children upon the day those children reach their majority, parents are not *legally* obligated to take care of their children beyond that day."[8] *Id.* at 642, 337 S.E.2d at 10. However, we limited this holding with the following caveat:

> There may well be special circumstances where a parent will be legally liable to support an adult child. Such a case is not before us now so we will not anticipate our decision. We will note, however, that although the general rule is one of nonliability, there is an exception for an adult child who is unmarried, unemancipated and insolvent and physically or mentally incapacitated from supporting himself.

*Id.* at n. 2.

Finally, in *Kinder v. Schlaegel,* 185 W.Va. 56, 404 S.E.2d 545 (1991), a father sought review before the circuit court of a family law master's finding in a divorce proceeding that the father had a duty to provide support for his disabled child who was over the age of majority. The circuit court overturned the decision of the family law master, ruling instead that neither the family law master nor the circuit court had jurisdiction to enter a child support award since the child was beyond the age of majority. *Id.* at 57, 404 S.E.2d at 546. The record in *Kinder* established that the child had been mentally retarded since birth; however, he was over the age of eighteen at the time the divorce proceeding was initiated. *Id.* Moreover, due to the disability, the child was precluded from supporting himself. *Id.* at 56, 404 S.E.2d 545. We concluded that because parents may have a duty to provide post-majority child support to an adult child who is physically and/or mentally unable to support himself, the circuit court and the family law master had jurisdiction. *Id.* at 58, 404 S.E.2d at 547.

---

7. *See* Comment, *The Parental Duty to Support Disabled Adult Children,* 9 DePaul L.Rev. 245 (1959–60) (discussing generally the evolution of this parental duty of support).

8. The *McKinney* case has been modified by the Legislature with the enactment of West Virginia Code § 48–2–15d (1995), which provides, in pertinent part, that:

(a) Upon a specific finding of good cause shown and upon findings of fact and conclusions of law in support thereof, an order for child support may provide that payments of such support continue beyond the date when the child reaches the age of eighteen, so long as the child is unmarried and residing with a parent and is enrolled as a full-time student in a secondary educational or vocational program and making substantial progress towards a diploma: Provided, That such payments may not extend past the date that the child reaches the age of twenty.

(b) Nothing herein shall be construed to abrogate or modify existing case law regarding the eligibility of handicapped or disabled children to receive child support beyond the age of eighteen.

The distinguishing factor between the instant case and *Kinder* is that while the children in both cases were past the age of majority at the time child support was sought, in *Kinder* the disability existed prior to the child reaching the age of majority, and both parents were aware of their child's disability prior to the divorce proceeding. In the present case, the child was not disabled prior to attaining the age of majority, and the onset of the disability did not occur until after child support had terminated in accordance with the provisions of the divorce decree. Thus, the issue here is whether a parent has a duty to support a child who becomes disabled subsequent to reaching the age of majority where the child has continually remained dependent upon either one or both parent(s) since attaining the age of majority.

Clearly, there would seem to be a moral duty for any responsible parent with the ability to assist in the support of his or her disabled child to do so. The legal issue, however, is more difficult.

We note at the outset, that a majority of jurisdictions either require that the child be incapacitated at the time of reaching the age of majority as a prerequisite to a parent's duty to provide post-majority support to the child, or else have only addressed the issue of post-majority support where the disabling condition was present prior to the child becoming that age. *See Martin v. Martin,* 494 So.2d 97, 99–100 (Ala.Civ.App.1986); *Petty v. Petty,* 252 Ark. 1032, 1035–37, 482 S.W.2d 119, 120–21 (1972); *Koltay v. Koltay,* 667 P.2d 1374, 1376 (Colo.1983); *Nelson v. Nelson,* 548 A.2d 109, 116 (D.C.1988); *Breuer v. Dowden,* 207 Ky. 12, 15, 268 S.W. 541, 542 (1925); *Castle v. Castle,* 15 Ohio St.3d 279, 283, 473 N.E.2d 803, 804 (1984); *see also* Noralyn O. Harlow, Annotation, *Postmajori-*

*ty Disability as Reviving Parental Duty to Support Child,* 48 A.L.R.4th 919, 926 (1986); *see generally* Todd R. Smyth, Annotation, *Child Support: Court's Authority to Reinstitute Parent's Support Obligation After Terms of Prior Decree Have Been Fulfilled,* 48 A.L.R.4th 952, 960–61 (1986). However, a few jurisdictions have held that a parent has a legal duty to support a disabled child regardless of whether her disability commenced before or after the child either was emancipated or attained the age of majority. *See Levy v. Levy,* 245 Cal.App.2d 341, 363, 53 Cal.Rptr. 790, 803 (1966) (stating that "[w]here an adult child is incapable of self support the duty [of a parent to provide support] may continue or arise"); *Sininger v. Sininger,* 300 Md. 604, 611, 479 A.2d 1354, 1358 (1984) (stating that "a parent who has the means to do so, has a duty to support an incapacitated adult child whose disability commenced after she attained the age of majority").

The limited issue before us is whether any obligation of support is owed a child who becomes disabled after reaching the age of majority, but who has neither married, nor ceased living at home with the custodial parent, and who has remained dependent upon that parent for support continuously since attaining the age of majority.[9]

To resolve this issue, it is necessary to further explore the concept of emancipation and what it entails. The Legislature, by enacting West Virginia Code § 48–2–15d,[10] has already recognized that a child who turns eighteen is not necessarily "emancipated" in accordance with West Virginia Code § 2–3–1, where the child is unmarried and residing with a parent, but is continuing substantial work towards a diploma in a secondary educational or vocational program.[11] *See* W.Va.

---

**9.** Obviously, the even more difficult issue, one not before us at this time, would involve the imposition of an obligation of support on parents when the child has become disabled by virtue of an accident or disease where the child has not only attained the age of majority but, until the disability, was self-sufficient and totally independent from his parents.

**10.** *See supra* note 7.

**11.** Similarly, parental support of an unemancipated disabled adult child is somewhat analogous to support of a state hospital resident, which the Legislature dealt with in the enactment of West Virginia Code § 27–8–1 (1992). The Legislature enabled the state to collect reimbursement for the cost of the maintenance of patients admitted to state hospitals from "each *patient or from the committee or guardian of the estate of the patient, or the estate of the patient if deceased,* or if that be insufficient, then from the

Code § 48–2–15d; *see also supra* note 8. Further, West Virginia Code § 49–7–27 (1995), reflects an appreciation of the fact that emancipation may encompass more than the child's age as the following statutory language demonstrates: "[a] child over the age of sixteen may petition a court to be declared emancipated[,] . . . [u]pon a showing that such child *can provide for his physical and financial well-being and has the ability to make decisions for himself. . . .*" *Id.* Even in *McKinney,* we indicated that, in the case of the disabled child, attention would be given to more than just whether the child had reached the age of eighteen, when we discussed the disabled adult child in terms of whether he was "unmarried, unemancipated and insolvent and physically or mentally incapacitated from supporting himself." 175 W.Va. at 642, 337 S.E.2d at 10 n. 2.

It is also instructive to examine the decisions of other jurisdictions in which it has been determined that the concept of emancipation entails more than just attaining the age of majority. For instance, in *Turner v. McCune,* 4 Mass.App.Ct. 864, 357 N.E.2d 942 (1976), the appeals court stated that emancipation "does not occur automatically upon reaching the age of majority." *Id.* at 865, 357 N.E.2d at 943. Further, the Court of Appeals of Ohio discussed whether child support payments had terminated for a child who had social and learning disabilities in *In re Owens,* 96 Ohio App.3d 429, 645 N.E.2d 130 (1994). In *Owens,* the child was enrolled in the Federal Job Corps, and while that federal program provided him with room and board, his mother continued to give him money, clothing, and other necessities. *Id.* at 431, 645 N.E.2d at 131. Prior to the father filing a motion to terminate child support on the basis that the child was emancipated, the child had dropped out of the program and was again residing with his mother. *Id.* at 432, 645 N.E.2d at 131. The Ohio court found that "[o]rdinarily, emancipation alludes to the freeing of a minor child from parental

control. The question as to when a child is emancipated so as to relieve a parent from the obligation of support depends upon the particular facts and circumstances of each case." *Id.,* 645 N.E.2d at 132 (citations omitted). Additionally, in *Wilkosz v. Wilkosz,* 124 Ill.App.3d 904, 80 Ill.Dec. 249, 464 N.E.2d 1232 (1984), the Appellate Court of Illinois, in holding that a child who had reached the age of majority was not emancipated for purposes of the parental immunity doctrine, concluded that "age is not the sole determinative factor in defining what constitutes an emancipation[,]" stating that

> what constitutes an emancipation is a question of law, but whether there has been an emancipation is a question of fact. Thus defendant's contention that solely because she reached the age of 18 she is emancipated is a legal, not factual, question. Rather, the facts and circumstances surrounding the emancipation would be a question of fact. This would include questions of residency, marital status, and such considerations as one's address on a driver's license.

*Id.* at 910, 80 Ill.Dec. at 253, 464 N.E.2d at 1236 (citing, in part, *State Farm Mut. Auto. Ins. Co. v. Differding,* 46 Ill.App.3d 15, 20, 4 Ill.Dec. 586, 589, 360 N.E.2d 522, 525, *rev'd on other grounds,* 69 Ill.2d 103, 12 Ill.Dec. 739, 370 N.E.2d 543 (1977)). Even the Supreme Court of Arkansas, which ultimately held in *Towery v. Towery,* 285 Ark. 113, 685 S.W.2d 155 (1985), that a father was under no duty to support his child who had become disabled after attaining the age of majority, imparted some significance to the fact that the parties had stipulated that the child was emancipated before the accident in that "[the child] . . . decided, as he well should have, where he wanted to live, where he wanted to go to college, and how he would live." *Id.* at 119, 685 S.W.2d at 158.[12]

Consequently, a disabled child's entitlement to post-majority child support is not determined solely by whether the disabling

---

patient's husband or wife, or if the patient be an *unemancipated child, the father and mother, or any of them.*" *Id.* (emphasis added).

**12.** *See* Robert M. Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temp.L.Q. 319, 345

(1970–71) (stating that "[t]he logical framework here is simply that *mere age should not be determinative of the right to support* ") (emphasis added)).

condition occurred before or after the child reached the age of majority. When the onset of a child's disability occurs after the age of majority, the duty of the parent(s) to provide post-majority child support [13] may be premised upon the trial court's conclusion that the disabled child has never been emancipated from his/her parent(s) either prior to or subsequent to attainment of the age of majority.

In making the determination of whether a disabled child was unemancipated at the time the disability occurred, the trial court should examine the facts and circumstances of each case, giving consideration to the following factors, as well as any others germane to the issue of emancipation: 1) whether the child continually resided in the home of one of his/her parents; 2) whether the child continually remained dependent on his/her parent(s) for financial support; and 3) whether the child has ever married. Furthermore, prior to awarding post-majority child support, the trial court should first determine that the child, after the onset of the mental and/or physical disability, remains unemancipated.

Applying the preceding criteria to the present case, it is clear that the Appellant's daughter, while having reached the age of majority, had not become emancipated from the Appellee at the time of her disabling accident. Therefore, the trial court properly concluded that the Appellant had a duty to provide his disabled daughter with post-majority support.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.

---

**13.** Of course, like any other child support case, the trial court must give consideration to the financial resources of the parent(s) and their consequent ability to pay child support in determining an appropriate award.