655 S.E.2d 765

Debbie PLUMLEY, Petitioner
Below, Appellee

v.

WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RE-
SOURCES/OFFICE OF HEALTH FA-
CILITY LICENSURE AND CERTIFI-
CATION, Respondent Below, Appellant.

No. 33287.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 11, 2007.

Decided Oct. 12, 2007.

Dissenting Opinion of Justice
Albright Dec. 10, 2007.

Concurring Opinion of Justice
Maynard Dec. 12, 2007.

Alice Warner Shumlas, Charleston, for Appellant.

L. Victor Navy, Barboursville, for Appellee.

BENJAMIN, Justice:

In the instant matter, the Appellant, the West Virginia Department of Health and Human Resources/Office of Health Facility Licensure and Certification (hereinafter "OHFLAC"), asks this Court to reverse a June 7, 2006, order entered by the Circuit Court of Cabell County, West Virginia. In its June 7, 2006, order, the Circuit Court of Cabell County reversed a November 11, 2005, order issued by the Secretary of the West Virginia Department of Health and Human Resources, (hereinafter "Secretary") after an administrative hearing, which required the

Appellee herein, Debbie Plumley, to close her "legally unlicensed health care home"[1] because she is prohibited by law from operating such a facility due to her prior conviction for felony incest. After a thorough review of the record in this matter and the applicable legal principles, we reverse the June 7, 2006, order entered by the Circuit Court of Cabell County and reinstate the Secretary's November 11, 2005, order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

OHFLAC, as the Secretary's designee, is charged with the enforcement of statutes and regulations governing legally unlicensed health care homes. *See* W. Va.Code § 16–15E–1a (2005); W. Va.Code § 16–5E–2(a) (1997); W. Va.C.S.R. § 64–50–1.6 (1999). In January 2005, OHFLAC received notification that a patient had been discharged from St. Mary's Hospital in Huntington, West Virginia, to Ms. Plumley's home located at 1314 James River Turnpike, Milton, West Virginia. Prior to such notification, OHFLAC was unaware of the existence of Appellee's facility. Therefore, OHFLAC sent surveyors to the location to determine the scope of services provided therein, if any, and any applicable governing laws. Upon inspection, the surveyors discovered that Appellee was caring for four (4) residents which would require her to be licensed as an assisted living residence. *See* W. Va.Code §§ 16–5D–

1, *et seq.* (2003). Thereupon, Appellee discharged one of her residents, removing her facility from the assisted living residence licensing requirements and bringing it within the scope of statutes and regulations governing legally unlicensed health care homes.

West Virginia Code § 16–5E–3 (1997) requires service providers of legally unlicensed health care homes to register with OHFLAC. In 1999, legislative rules governing the registration, inspection and operation of legally unlicensed health care homes were enacted. Among those rules was a requirement that all service providers, household members, exclusive of residents, and care givers at an unlicensed home have a personal history free of abuse, neglect, and fraud as evidenced by a background check of the central abuse registry. Specifically, W. Va.C.S.R. § 64–50–4.4 provides:

> In an unlicensed home administered by a service provider, the service provider, household members, exclusive of residents, and all care givers shall have a personal history which is free of: evidence of abuse, neglect, fraud, or substantial and repeated violations of applicable laws and rules in the operation of any health or social care facility or service organization, or in the care of dependent persons; and conviction of crimes relevant for the provision of care to a dependent population as evidenced by a background check of the WV state police central abuse registry.

1. The registration and inspection of service providers of legally unlicensed health care homes is governed by W. Va.Code § 16–5E–1, *et seq.* (1997) and W. Va.C.S.R. § 64–50–1, *et seq.* (1999). A "legally unlicensed health care home" is a term of art defined in West Virginia law in our Code of State Rules. West Virginia Code of State Rules § 64–50–2.6 (1997), provides:

   Legally unlicensed health care home.—unlicensed home, or home. Any place in this state in which a service provider provides accommodations and personal assistance, whether for compensation or not, for a period of more than twenty-four (24) hours, to one (1) to three (3) residents who are not related to the service provider or his or her spouse by blood or marriage within the degree of consanguinity of second cousin. These residents may be dependent upon the services of others by reason of physical or mental impairment or may require limited and intermittent nursing care, includ-

ing those individuals who qualify for and are receiving services coordinated by a licensed hospice.

Though designated as being legally unlicensed in our law, these facilities are subject to oversight by OHFLAC, must be registered with OHFLAC and must comply with all applicable registration and operational requirements set forth in W. Va.Code § 16–5E–1, *et seq.* (1997) and W. Va. C.S.R. § 64–50–1, *et seq.* (1999). Although this opinion may refer to the facility operated by Ms. Plumley as a legally unlicensed health care home because the parties have consistently referred to in that manner, it is undisputed that prior to OHFLAC intervention in January 2005, Ms. Plumley had failed to even attempt to register the facility with OHFLAC as required by West Virginia law. As Ms. Plumley admits to taking in her first resident in 1997, she operated her facility for nearly eight years without registering the facility in compliance with West Virginia law.

Appellee has consistently denied any knowledge of the legal requirement to register her home as a legally unlicensed health care home or OHFLAC's role in overseeing such facilities prior to OHFLAC's appearance at her home in January 2005.[2]

Upon being notified by OHFLAC that she would be required to close her facility unless she applied for its registration as a legally unlicensed health care home, Appellee began the application process, including the submission of a "fingerprint" card necessary for a criminal background check by the Criminal Investigation Bureau of the West Virginia State Police (hereinafter "CIB"). By report dated March 29, 2005, the CIB revealed that Appellee had previously been convicted of eight counts of making and issuing worthless checks[3] in 1986, of felony incest with a minor[4] in 1987, of forged/uttered checks[5] in 1992 and, again, of uttering[6] in 1993. Upon receipt of the CIB report, the director of OHFLAC issued an administrative order on April 12, 2005, requiring Ms. Plumley to close her facility based upon the results of the criminal background check.

Ms. Plumley timely requested an administrative hearing to contest OHFLAC's closure order. The requested hearing was held on May 10, 2005. At the hearing, OHFLAC focused upon Ms. Plumley's incest conviction as disqualifying her from operating a legally unlicensed health care home and noted that the passage of time does not impact the conviction's disqualifying effect. The CIB report was admitted into evidence at the May 10, 2005, hearing without objection. Ms. Plumley testified at the hearing, admitting her felony conviction for incest and that she served five years in prison as a result of this conviction. Ms. Plumley argued that her conviction should not preclude her from operating a legally unlicensed health care home because it does not fall within the scope of the regulation, that it was remote in time and that her record since the conviction indicates she is unlikely to reoffend. The hearing examiner found, as a matter of law, that Ms. Plumley "does not have a personal history free of abuse, neglect, fraud and other matters including any conviction of a crime relevant for the provision of care to a dependent population as evidenced by a background check of the West Virginia State Police Central Abuse Registry." Further, the hearing examiner found, as a matter of law, that Ms. Plumley was "legally ineligible to operate a legally unlicensed health care home in West Virginia" due to her felony incest conviction. By order dated November 11, 2005, the Secretary adopted the hearing examiner's recommended findings of fact and conclusions of law and ordered Ms. Plumley to close her facility, refrain from admitting any additional

---

**2.** This position is somewhat incredible in light of Appellee's own admissions and arguments. According to Appellee, she began working at Clark's Care Home, another legally unlicensed health care home in 1992. In 1997, Appellee admits that she began caring for one of Clark Care Home's elderly residents in her own home. Ms. Plumley has represented to this Court that after OHFLAC required Clark's Care Home to reduce its resident census from five to three following an inspection of the facility in 1999, she took in another former resident of Clark's Care Home, rented a larger house and increased her own resident census to three. Appellee admits to caring for at least five different elderly residents in her home since 1999 and to having at least four residents in her home at one time. Moreover, she argued before the circuit court that OHFLAC should have been aware of the existence of her facility before January 2005, in light of its frequent inspections of Clark's Care Home which was located next door to Appellee's facility.

**3.** The CIB report indicates that this conviction was the result of a guilty plea to misdemeanor

charges. Appellee was sentenced to forty-eight (48) days in jail, assessed costs and apparently ordered to make restitution.

**4.** This charge arose from Appellee's conduct with Appellee's minor daughter and an unidentified adult male. Appellee *pled guilty* to the incest charge and was sentenced to five (5) to ten (10) years in the Huttonsville Correctional Facility. She served five (5) years of this sentence.

**5.** According to the CIB report, this felony conviction was also the result of a guilty plea for which Appellee received a one (1) to five (5) year suspended sentence.

**6.** The CIB report reveals that Appellant pled guilty to this felony charge and was sentenced to one (1) to five (5) years in the Pruntytown correctional facility. She was paroled on October 25, 1993, and was discharged from her parole on September 25, 1995, due to the expiration of her sentence.

residents and relocate her then-existing resident population within thirty (30) days.

Ms. Plumley thereafter appealed the Secretary's closure order to the Circuit Court of Cabell County. In her petition for appeal to the circuit court, Ms. Plumley acknowledged her challenge was grounded primarily in equity and argued that OHFLAC's strict adherence to W. Va.C.S.R. § 64–50–4.4 failed to take into account her character or risk to residents. Further, she maintained that OHFLAC should have known of the existence of her facility long before January, 2005, due to its frequent inspection of Clark Care Home which was located next door to Ms. Plumley's facility. She also argued that had she petitioned, prior to 1997, to have her conviction expunged[7] and been successful, it would not have appeared on the CIB report and would not have precluded her from operating her facility.

By order dated June 7, 2006, the Circuit Court of Cabell County reversed and vacated the Secretary's closure order and ordered that OHFLAC permit Ms. Plumley to continue operating her facility. In its order, the circuit court adopted twenty-three (23) paragraphs of Ms. Plumley's petition as its findings of fact. It further found that the closure order would permit the "indiscretions of a number of years gone by" to "substantially reduce[ ] or take[ ] away the right to earn a living or livelihood." The circuit court determined that Ms. Plumley did not perform incest but had permitted it to happen, had self-reported the incest to law enforcement and had pled guilty. Additionally, the circuit court held:

> [t]hat the past record relative to incest was not found on a background check of the West Virginia State Police Central Abuse Registry and does not comport with *West Virginia Code 15–2C–2*, which defines the Central Abuse Registry, and that it requires more than a Criminal Investigation

Bureau check, which is not the Central Abuse Registry.

In reversing and vacating the Secretary's closure order, the circuit court held that it was a "clearly unwarranted exercise of discretion under the last phrase of *64 CSR 50 4.4* for the [Secretary] to find that 'a dependent population' relates to Mrs. Plumley's elderly patients[,]" and that the closure order was in excess of the Secretary's authority and an unwarranted exercise of discretion.

OHFLAC appealed the circuit court's decision to this Court raising three (3) primary assignments of error. First, OHFLAC argues that the circuit court erred in its interpretation of W. Va.C.S.R. § 64–50–4.4 by finding that a minor child is not a member of a dependent population. Next, OHFLAC maintains that the circuit court erred in its interpretation of the Central Abuse Registry requirements.[8] Further, OHFLAC asserts that the circuit court relied upon facts not in evidence and that it erred by finding that the Secretary's closure order violated Ms. Plumley's constitutional rights, and constituted an unwarranted abuse of discretion in excess of the Secretary's authority. In response, Ms. Plumley argues that W. Va.C.S.R. § 64–50–4.4 does not define dependent population and that a CIB background check is insufficient to satisfy the rule's requirement of listing on the Central Abuse Registry. Therefore, Ms. Plumley argues the circuit court did not err in finding the closure order constituted an unwarranted abuse of discretion based upon a mistaken impression of legal principles and that it impinged on her substantial right to earn a living.

## II.

### STANDARD OF REVIEW

In the instant matter, the Appellant has asked this Court to review a circuit court's alteration of an administrative order

---

7. In *State ex rel Barrick v. Stone*, 201 W.Va. 569, 499 S.E.2d 298 (1997), this Court held that a circuit court did not have the power to order the CIB to expunge a criminal history record of a valid criminal conviction.

8. According to OHFLAC, the circuit court at the hearing on this matter confused the Central Abuse Registry with the West Virginia Sex Offenders Registry. This confusion, however, is not apparent in the circuit court's order which refers only to the Central Abuse Registry. OHFLAC's argument in this regard likely arises from the circuit court's comments at its May 1, 2006, hearing in this matter.

brought to the circuit court by the person aggrieved by the administrative decision. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). Judicial review of an administrative agency decision is governed by W. Va.Code § 29A–5–4(g) (1998) which provides that:

> the court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions, or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See also* Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983). A reviewing court is bound to evaluate the matter based upon the administrative agency's findings of fact to determine whether there is evidence on the record as a whole to support the agency's decision, regardless of whether the court would have reached a different conclusion on the same set of facts. Syl. Pt. 1, *Walker v. West Virginia Ethics Commission,* 201 W.Va. 108, 492 S.E.2d 167 (1997). With these standards in mind, we turn to the issues presented.

9. The incest statute further defines daughter as "a person's natural daughter, adoptive daughter

## III.

### DISCUSSION

■ The central issue to be decided herein, the same issue that was the focus of the administrative hearing, is whether Ms. Plumley's felony incest conviction precludes her from operating a legally unlicensed health care home under the provisions of W. Va. C.S.R. § 64–50–4.4. This rule requires that a service provider "have a personal history which is free of: evidence of abuse [or] neglect . . . in the care of dependent persons; and conviction of crimes relevant for the provision of care to a dependent population as evidenced by a background check of the WV state police central abuse registry." At the outset of this discussion we reject as wholly without merit any argument set forth by Ms. Plumley that she should be excused from her non-compliance with W. Va.C.S.R. § 64–50–4.4's background check requirement because she was never subjected to a background check while working at Clark's Care Home and was, therefore, unaware of this legal requirement. The background check requirement was enacted and went into effect in 1999. Thus, there was no legal requirement for a background check while Ms. Plumley was employed at Clark's Care Home between 1992 and 1997 and the absence of such a requirement during that time period cannot serve as an excuse for failure to comply with the 1999 rule.

■ Thus, the first question to be answered is whether a felony incest conviction constitutes evidence of abuse or neglect in the care of dependent persons. Under West Virginia law, a "person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt." W. Va.Code § 61–8–12(b) (1994). Ms. Plumley pled guilty to incest with her minor daughter.[9] Although the limited record before this Court does not reveal the child's age at the time of the offense, it is well recognized under our law that the term "minor" means a

or the daughter of a person's husband or wife." W. Va.Code § 61–8–12(a)(3).

person under the age of eighteen (18) years. *See* W. Va.Code § 2–2–10(aa) (1998); *Glen Falls Ins. Co. v. Smith,* 217 W.Va. 213, 224, 617 S.E.2d 760, 771 (2005); *Kinder v. Schlaegel,* 185 W.Va. 56, 57, 404 S.E.2d 545, 546 (1991). Black's Law Dictionary defines minor as "a person who has not reached full legal age; a child or juvenile." Black's Law Dictionary 470 (8th Ed.2004). It is generally accepted that a parent is legally responsible for the physical and financial well-being of his or her child until such time as the child is emancipated. *See, e.g.,* W. Va.Code § 48–29–303 (2001) (addressing liability for reasonable and necessary services of physician rendered to minor child and for the support of minor child); W. Va.Code § 49–7–27 (1977) (upon court-ordered emancipation of child, parent has no duty to provide the child with care and financial support); *Casdorph v. Casdorph,* 194 W.Va. 490, 460 S.E.2d 736 (1995) (child may be entitled to post-majority support from parent where child suffers a disabling condition prior to emancipation). The term "dependent" has been defined as "[o]ne who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Black's Law Dictionary 470 (8th Ed.2004). In light of the definition of dependent and a parent's recognized obligation to support and care for his or her minor child, a finding that a parent's conviction for felony incest against his or her minor child constitutes evidence of abuse or neglect in the care of a dependent person is easily reached. Indeed, there are few persons more dependent than a minor child is upon his or her parent. Pursuant to our law, incest is a crime of abuse and neglect because a person convicted of incest against a child for whom the person has custodial, visitation or other parental rights, the person is statutorily deemed to be an abusing parent. W. Va.Code § 61–8–12(c). Accordingly, we now hold that a conviction for felony incest against a person's minor child constitutes evidence of abuse or neglect in the care of dependent persons within the scope of W.Va.C.S.R. § 64–50–4.4.

West Virginia Code of State Rules § 64–50–4.4 also requires that a service provider "have a personal history which is free of: . . . conviction of crimes relevant for the provision of care to a dependent population as evidenced by a background check of the WV state police central abuse registry." As we have just held that one's minor child constitutes a dependent person under the first clause of W. Va.C.S.R. § 64–50–4.4, a finding that one's minor child is a member of a dependent population is easily reached and logically required. A dependent person is undoubtedly a member of a dependent population. Further, the violation of one's own minor child through the commission of incest absolutely breaches a parent's duty to care for and protect the child, a member of a dependent population. The abuse and neglect of a child as evidenced by the commission of incest is conduct relevant to the provision of care to that child. Thus, we now hold that a conviction for felony incest against a person's minor child constitutes a crime relevant for the provision of care to a dependent population within the scope of W. Va.C.S.R. § 64–50–4.4.

■ If a background check of the Central Abuse Registry reveals the incest conviction, the final clause of W. Va.C.S.R. § 64–50–4.4 is satisfied and the person is precluded, by law, from working in or operating a legally unlicensed health care home. Appellee has taken the position that a CIB background check is insufficient to satisfy the rule's requirement and the circuit court agreed. The circuit court specifically found that evidence of a person's inclusion on the Central Abuse Registry requires more than a CIB background check. A cursory review of the statutes governing the Central Abuse Registry, however, reveals that the circuit court erred in this finding.

The Central Abuse Registry, which was statutorily created in 1996, is defined as "the registry created by [W. Va.Code § 15–2C–1, *et seq.*] which shall contain the names of individuals who have been convicted of a felony or misdemeanor offense constituting abuse, neglect or misappropriation of the property of a child or an incapacitated adult or an adult receiving behavioral health services." W. Va.Code § 15–2C–1(a) (2001).

Pursuant to W. Va.Code § 15–2C–2(a) (2006),[10] the CIB:

> shall establish a Central Abuse Registry, to contain *information relating to criminal convictions involving child abuse or neglect,* abuse or neglect of an incapacitated adult or an adult receiving behavioral health services and misappropriation of property by individuals specified in subsection (b) of this section and *information relating to individuals required to be registered as a sex offender.*

(Emphasis added). Included within the definition of the term "child abuse or neglect" in W. Va.Code § 15–2C–1(b) is a reference to the definition of the same in W. Va.Code § 49–1–3 (2007). W. Va.Code § 49–1–3(d)[11] defines "child abuse or neglect" as "physical injury, mental or emotional injury, sexual abuse, sexual exploitation, sale or attempted sale or negligent treatment or maltreatment of a child by a parent, guardian or custodian who is responsible for the child's welfare, under circumstances which harm or threaten the health and welfare of the child." Ms. Plumley's incest conviction subjects her to inclusion on the Central Abuse Registry not only because it constitutes child abuse or neglect, but also because it subjects her to registration as a sex offender. Pursuant to W. Va.Code § 15–12–2(b)(5) (2006), any person who has been convicted of an offense under W. Va.Code § 61–8–12 is required to register as a sex offender.[12]

Having determined that Ms. Plumley's incest conviction subjects her to inclusion on the Central Abuse Registry, the question then becomes whether a CIB background check is sufficient to satisfy W. Va.C.S.R.

§ 64–50–4.4's requirement that the incest conviction be "evidenced by a background check of the WV state police central abuse registry"? That question is readily answered in the affirmative by reference to the Central Abuse Registry statutes. Ms. Plumley's incest conviction occurred in 1987. The Central Abuse Registry statutes were first enacted nine (9) years later, in 1996. The Legislature dealt with inclusion of qualifying convictions occurring prior to the establishment of the Central Abuse Registry through the enactment of W. Va.Code § 15–2C–3(c) (2001), which provides:

> Information relating to convictions prior to the effective date of this section of a misdemeanor or a felony constituting child abuse or abuse or neglect of an incapacitated adult receiving behavioral health services shall, to the extent which is feasible and practicable, be placed on the central abuse registry. When any requester requests information related to a named individual, the criminal identification bureau may search and release other information maintained by the bureau to determine whether that individual has been convicted of offenses which are subject to inclusion on the registry.

According to W. Va.Code § 15–2C–3, a CIB background check is sufficient to determine whether a person is or should be included on the Central Abuse Registry. The circuit court therefore erred in holding otherwise. So that there be no future confusion regarding this issue, we now hold that where the conviction of a crime relevant for the provision of care to a dependent population is

---

**10.** Although W. Va.Code § 15–2C–2 was amended in 2006, subsection (a) was not amended. The 2006 amendments added a category of persons subject to registration on the Central Abuse Registry. The 2001 enactment of subsection (b), at issue herein, stated in relevant part: "[t]he central abuse registry shall contain, at a minimum, information relating to: ... all individuals required to register with the West Virginia state police as sex offenders pursuant to the provisions of article twelve, chapter fifteen of this code ..." Pursuant to the 2006 amendments, this portion of subsection (b) now reads

> [t]he Central Abuse Registry shall contain, at a minimum, information relating to: ... all individuals required to register with the Child

Abuse and Neglect Registry established pursuant to article thirteen, chapter fifteen of this code; and information relating to all individuals required to register with the West Virginia State Police as sex offenders pursuant to the provisions of article twelve, chapter fifteen of this code...."

**11.** The 2007 amendments to W. Va.Code § 49–1–3 did not affect the definition of "child abuse or neglect."

**12.** The 2006 amendments to W. Va.Code § 15–12–2 did not impact the requirement that persons convicted of incest under W. Va.Code § 61–8–12 register as sex offenders.

revealed by background check by the West Virginia State Police Criminal Investigation Bureau and the crime is one which is or should be included on the Central Abuse Registry, the provisions of W. Va.C.S.R. § 64–50–4 preclude the person so convicted from acting as a service provider or care giver in a legally unlicensed health care home or being a household member of such a home.

Having found that a felony incest conviction involving a person's minor child not only constitutes evidence of abuse or neglect in the care of a dependent person, but also constitutes a crime relevant for the provision of care to a dependent population, we cannot agree with the circuit court that the Secretary's closure order was a clearly unwarranted exercise of discretion or entered in excess of her authority. To the contrary, we find that the circuit court exceeded the scope of its review authority in making findings of fact not supported by the record before the administrative agency, not affording appropriate deference to the Secretary's findings of fact and substituting its own judgment for that of the agency. The circuit court was bound to evaluate this matter upon the Secretary's findings of fact and the record created at the administrative hearing, affording deference to the Secretary's findings unless the circuit court found the same to be clearly wrong. *See* Syl. Pt. 1, *Walker;* Syl. Pt. 1, *Muscatell.* Instead, the circuit court went beyond the record created before the administrative agency, adopted twenty-three paragraphs of Ms. Plumley's petition in circuit court as its own findings of fact without regard as to whether those "facts" appeared in the administrative record and failed to explain why the Secretary's findings of fact were clearly wrong. Additionally, the circuit court diminished the undisputed and admitted fact that Ms. Plumley pled guilty to

incest and served five years in prison for the same and found that "she did not perform incest but ... permitted it to happen while intoxicated and while in a tumultuous period in her life." Such a finding is decidedly inconsistent with Ms. Plumley's guilty plea to the incest charge. Further, the circuit court made findings of fact regarding Ms. Plumley's ability, or inability, to earn a living if not permitted to operate her facility when absolutely no evidence was presented to the administrative agency on this subject. Moreover, Ms. Plumley's ability, or inability, to otherwise earn a living is not even relevant to whether she may legally operate a legally unlicensed health care home and care for dependent persons. As the circuit court went beyond the administrative record in making its findings of fact, failed to afford the Secretary appropriate deference as to factual matters, substituted its own judgment on factual matters without explanation as to how the Secretary erred, and erred as a matter of law on the issues of the effect of Ms. Plumley's incest conviction and Central Abuse Registry requirements, the circuit court's June 7, 2006, order must be, and is, reversed.

## IV.

## CONCLUSION

Ms. Plumley's conviction for felony incest against her minor daughter constitutes evidence of abuse in the care of a dependent person and is a conviction relevant to the provision of care to a dependent population. As such, she is precluded from operating a legally unlicensed health care home pursuant to the provisions of W. Va.C.S.R. § 64–50–4.4 (1999).[13] Accordingly, the June 7, 2006, order of the Circuit Court of Cabell County is

---

**13.** Though not relied upon by the Secretary in her closure order and therefore not at issue on this appeal, Ms. Plumley's prior convictions for uttering, forgery and issuing worthless checks may also preclude her from operating a legally unlicensed health care home pursuant to the provisions of W. Va.C.S.R. § 64–50–4.4 (1999) to the extent they may constitute a personal history of fraud in the operation of any health or social care facility or service organization, or in the care of dependent persons. One might reasonably conclude that the Secretary is empowered to consider whether a history of such convictions would preclude Ms. Plumley from caring for dependent persons who are or may be unable to safeguard or protect their physical possessions and financial assets. Because the record does not reveal the circumstances surrounding those convictions, we do not express a specific further opinion on their relevance herein.

hereby reversed and the Secretary's November 11, 2005, order is reinstated.

**Reversed**

Justices STARCHER and ALBRIGHT dissent and reserve the right to file dissenting opinions.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

ALBRIGHT, J., dissenting:

(Filed Dec. 10, 2007)

This case should forever be known as the "No Chance of Redemption; Scarlet Letter" case.

The lower court opinion and order in this case evidenced a thorough and sensitive consideration of the evidence and a thorough and sensitive consideration of the language and underlying purposes of Article 5E, Chapter 16 of the Code of West Virginia of 1931, as amended, providing for the "Registration and Inspection of Service Providers in Legally Unlicensed Health Care Homes," and of the regulations promulgated under the authority of that statute.

In essence, the lower court gave a reasoned, limiting, interpretation to the provisions of that statute and the regulations promulgated under it which operate to prohibit the granting of registration to certain prospective service providers in legally unlicensed health care homes. In effect, the lower court sought to ascertain whether the record disclosed that the applicant had been guilty of abuse or a criminal act that might reasonably be expected to be a threat to the "dependent population" the applicant sought to serve. After carefully considering the record of the particular facts underlying this applicant's felony conviction in 1987, and the applicants' employment activities since that time, the lower court concluded that those underlying facts, that felony conviction and that employment record clearly demonstrated that the applicant posed no threat whatever to the dependent population she sought to serve.

My colleagues who joined in the majority opinion chose instead a rigid, all encompassing interpretation of the statute and regulations, setting in concrete bright line syllabus points in support of their approach to the statute. The clear effect of the majority opinion is to announce that there can be no extenuating circumstances, no reasoned exceptions, no redemption!

The reality of this case is that the applicant did not herself engage in an incestuous act with her child. The reality is that the lapse of judgment-the criminal act of which she was guilty in 1987—arose out of a serious failure to protect her child from sexual assault by another person, for which she has expressed remorse and for which she has been punished by rather lengthy imprisonment. The reality of the case is also that the lower court heard substantial evidence that for a long time the applicant had in fact rendered to an aged "dependent population" the very services for which she was seeking registration, all without any incident or occasion that suggests in the slightest that she might abuse or hurt that aged "dependent population." The lower court could see what my majority colleagues would not:

> There simply was nothing in record which demonstrated any reasonable likelihood that this applicant, in these circumstances, had or would abuse or hurt the "dependent population" she sought to serve.

The lower court properly concluded that the designee of the Secretary of the Department of Health and Human Resources serving as the "Director" under the statute had unreasonably applied the statute and the regulations to deny this applicant registration.

In reversing that conclusion, the majority has conjured up new law, rigid, no-holds barred, bright lines of prohibition that deny the possibility—indeed the high probability—that a person can achieve redemption, can overcome failings, can become a productive, good citizen deserving of employment and, in this case, registration as a service provider to an aged dependent population.

Accordingly, her reward from this Court is to be awarded a "Scarlet Letter." From that I dissent, with a special note of admiration for the courage and sagacity of the lower court.

MAYNARD, J., concurring:

(Filed Dec. 12, 2007)

I agree with the majority opinion but write separately to address my dissenting colleagues' assertions that Ms. Plumley's past felony incest conviction is merely an "indiscretion" or "lapse of judgment" that is irrelevant to her present ability to care for aging dependent persons. My dissenting colleagues' understanding of W. Va.C.S.R. § 64–50–4.4 deviates from this Court's established rules of statutory interpretation. Specifically, this Court has held that "[s]tatute or administrative rule may not, under guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point. 1, *Consumer Advocate Div. of Pub. Serv. Comm'n v. Public Serv. Comm'n of West Virginia,* 182 W.Va. 152, 386 S.E.2d 650 (1989). Application of the dissents' erroneous statutory analysis would undermine and distort the clear intent of the Legislature to protect disabled citizens who totally depend on their caregivers to meet their most basic and intimate needs.

Ms. Plumley's felony incest conviction is unquestionably evidence of abuse or neglect in the care of dependent persons. She is thereby precluded from operating a legally unlicensed health care home. Additionally, the victim's status as a minor adds to the atrociousness of Ms. Plumley's actions. There are few segments of society more dependent and helpless than children. Certainly, a felony incest conviction speaks to one's ability to care for other people who, by definition, cannot care for themselves. This Court would not be executing the Legislature's intent to protect dependent people if it entrusted Ms. Plumley with their care knowing that she seriously failed to protect her minor daughter who was completely dependent upon her.

Moreover, my dissenting, colleagues seem to forget that it was not Ms. Plumley, but her vulnerable child, who was victimized. The majority opinion does not preclude Ms. Plumley from pursuing all means of employment nor does it preclude her from becoming a productive and good citizen. To protect the class of people for whom she desires to serve, however, Ms. Plumley must choose an alternative career path. Therefore, I concur with the majority opinion.